IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOVAN WILLIAMS,

                              Plaintiff,

   v.                                        OPINION and ORDER

CORRECTIONAL OFFICER REYES,            17-cv-452-jdp

                             Defendant.

---

Pro se plaintiff and prisoner Jovan Williams is proceeding on a claim that defendant Jose Reyes, a correctional officer at Green Bay Correctional Institution, violated Williams's Eighth Amendment rights by failing to prevent his attempted suicide. Before the court is Reyes's motion for summary judgment, Dkt. 40, Williams's motion for assistance in recruiting counsel, Dkt. 52, and Williams's motion for judgment in his favor on the ground that Reyes failed to file a reply brief in support of summary judgment, Dkt. 57.

Because the parties' proposed findings of fact and responses show that there are disputed issues of material fact that must be resolved by a jury, I am denying Reyes's motion for summary judgment. I am denying Williams's motion for assistance in recruiting counsel because I am not persuaded that he will be unable to present his version of events to a jury at trial. Finally, I am denying Williams's motion for judgment in his favor because Reyes was not required to file a reply brief in support of his summary judgment motion.

UNDISPUTED FACTS

On June 27, 2016, while plaintiff Jovan Williams was in observation status at Green Bay Correctional Institution, defendant Correctional Officer Jose Reyes delivered a "nutraloaf"

lunch to Williams. The parties dispute what happened next. According to Williams, the nutraloaf was wrapped in a plastic bag, and Williams told Reyes he was going to use the plastic bag to harm himself. Williams says that Reyes responded by saying, "If you want to harm yourself with the plastic bag, then go ahead and have fun with it." Williams says that Reyes then walked away, leaving the plastic bag in Williams's cell. According to Reyes, he did not give Williams a plastic bag. Reyes states that the prison kitchen packages nutraloaf in wax paper, not plastic bags. Reyes says that after he delivered the nutraloaf, Williams complained about receiving a nutraloaf meal, but Reyes denies that Williams ever showed him a plastic bag or told him that he was going to harm himself with a plastic bag.

Although the parties disagree about where Williams obtained the plastic, it is undisputed that at around 4:00 a.m. on June 28, Williams put a plastic bag or plastic wrap over his head. A few minutes later, a sergeant noticed Williams on the floor with plastic wrapped around his head. Officers removed the plastic from Williams's head. According to Williams, he was unconscious and not breathing when the officers found him. According to Reyes, Williams was awake and breathing when the plastic was removed. Officers took Williams to the Health Services Unit, where he was assessed by a nurse. Williams states that he reported to the nurse that he was experiencing an excruciating headache, dizziness, difficulty breathing, weariness, confusion, and difficulty moving. The nurse reported in her progress notes that Williams's breathing was not labored, he was not in any distress, he was alert, and he spoke with a strong, clear voice. The nurse then cleared Williams to return to his cell.

ANALYSIS

A. Reyes's motion for summary judgment

The Eighth Amendment imposes a duty on prison officials not only to provide "humane conditions of confinement," but to ensure that "reasonable measures" are taken to guarantee inmate safety and prevent harm. *Farmer v. Brennan*, 511 U.S. 825, 834–35 (1994). An inmate may prevail on a claim under the Eighth Amendment by showing that the defendant acted with "deliberate indifference" to a "substantial risk of serious harm" to his health or safety. *Id.* at 836. Williams is proceeding on an Eighth Amendment claim that Officer Reyes failed to prevent him from attempting suicide and instead, encouraged him to do so. Reyes makes three arguments as to why Williams cannot succeed on his Eighth Amendment claim.

First, Reyes argues that Williams cannot satisfy the objective element of his Eighth Amendment claim because he cannot prove that he actually faced a substantial risk of serious harm to his health or safety from the plastic his placed over his face. Reyes acknowledges that attempted suicide can be a serious harm under the Eighth Amendment. *See Pittman ex rel. Hamilton v. County of Madison, Illinois*, 746 F.3d 766, 775–76 (7th Cir. 2014); *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). However, Reyes argues that Williams's decision to place plastic over his face was not a genuine suicide attempt. Reyes points to Williams's psychiatric records suggesting that Williams was using threats of self-harm to obtain attention from female clinicians, act out when female staff members are present, and to seek a transfer to another institution. Dkt. 46-2. Reyes also argues that Williams was not in any real danger from the plastic, as he never stopped breathing, officers removed the plastic, and a nurse concluded that his vitals were normal and he was not in distress.

However, Williams has submitted a sworn statement disputing Reyes's version of events. Dkt. 49. Williams says that he was feeling suicidal, he placed the plastic over his head in an attempt to suffocate himself, he fainted, and that after he was revived, he experienced severe headaches, difficulty breathing, dizziness, and confusion. Williams's account contradicts the account of the nurse who treated him and, in light of Williams's failure to offer any explanation for why the nurse would lie about his condition, a jury may well conclude that Williams's version of events is unbelievable. Nonetheless, Williams's sworn statement creates a genuine dispute of material fact that must be resolved by a jury. *Orlowski v. Milwaukee Cty.*, 872 F.3d 417, 419 (7th Cir. 2017) ("It is up to the jury to determine the credibility of witnesses and weigh the evidence.").

Reyes's second argument is that Williams cannot prove that Reyes acted with deliberate indifference by giving Williams a plastic bag with which he could harm himself. Reyes points to evidence that nutraloaf is served to inmates in wax paper, not plastic bags. Reyes also argues that if he inadvertently provided Williams a plastic bag, he had no way of knowing that Williams would use it to harm himself.

However, Williams says that he showed Reyes the plastic bag and told him he was going to harm himself with it. Williams says that Reyes responded by telling him to "have fun with it." If a jury were to believe Williams, it may reasonably conclude that Reyes recognized, but disregarded, and even encouraged, a credible suicide threat. A reasonable jury could conclude that Reyes's failure to confiscate the bag or, at the very least, report what he had heard from Williams to a supervisor, amounted to deliberate indifference to a substantial risk of serious harm to plaintiff.

4

Reyes's third argument is that he is entitled to qualified immunity because no clearly established law required Reyes to screen all items for an inmate in observation status for every potentially harmful item. This argument fails, however, because it is well established that a correctional officer cannot ignore an inmate's suicide risk and that he must take steps to ensure the inmate's safety. *See, e.g., Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). If Williams's version of events is proven, then Reyes's action was unlawful under clearly established law.

In sum, because the parties' factual disputes cannot be resolved at summary judgment, I must deny Reyes's motion. *United States v. Luce*, 873 F.3d 999, 1005 (7th Cir. 2017) (summary judgment appropriate only when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law") (citations omitted); Fed. R. Civ. P. 56(a). That said, I note that the parties' versions of events are strikingly different. The parties should be aware that if evidence is introduced before or at trial, such as video footage of the events at issue in this case, that proves that either party has knowingly submitted false statements to the court, I will consider sanctioning the dishonest party. *See Rivera v. Drake*, 767 F.3d 685, 687 (7th Cir. 2014) (imposing monetary sanction on prisoner who made false statements to court and referring the case to the United States Attorney for potential prosecution for perjury).

**B. Williams's motion for assistance in recruiting counsel**

Williams has renewed his request for court assistance in recruiting counsel. Dkt. 52. I denied Williams's previous request, concluding that he had not shown that the case is so complex or that his skills are so poor that I should recruit a lawyer for him. Dkt. 36. In his latest motion, Williams makes the same arguments he made previously: he is mentally ill, he

has no legal knowledge or litigation experience, he has relied on assistance from more knowledgeable inmates to prepare court filings, and he will have difficulty handling a jury trial and cross-examining witnesses without assistance.

I am not persuaded that Williams will be unable to present his case at trial on his own. Williams is concerned that he lacks legal training and does not know how to present a case to a jury, but he should know that he is in the same position as most other pro se litigants in that respect, almost none of whom has legal training of any kind. Williams's single deliberate indifference claim against a single defendant is relatively simple in comparison to many cases brought by pro se litigants. Williams's primary responsibility at trial will be to tell the jury his version of events: what happened after Reyes delivered the nutraloaf to Williams. Although Williams says he has a mental illness and has relied on other inmates to litigate this case, he has not submitted anything suggesting that he will be unable to tell his version of events at trial. In a few weeks, Williams will receive a trial preparation order from the court that will provide him with more guidance about how to present his claim at trial. If, after reviewing that order, Williams has specific questions about what to do at trial, he should write to the court to ask his questions.

I sympathize with Williams's concerns regarding his ability to present his claim at a trial in front of a jury. Williams's ability to present his claim on paper with assistance from other prisoners may not translate directly into his being able to prepare opening and closing statements, develop direct lines of questioning, or cross-examine witnesses. *See Walker v. Price*, 900 F.3d 933, 939 (7th Cir. 2018) (district courts should consider specific demands of trial when evaluating pro se litigant's need for counsel). But these are the same challenges facing all pro se litigants, and this court cannot recruit counsel for every pro se plaintiff whose claims

survive summary judgment. There simply are not enough voluntary attorneys to take on such representation. Each year more than 300 lawsuits are filed in this district by pro se plaintiffs, most of whom are in state custody. The court is usually able to recruit around 20 volunteer lawyers to represent pro se litigants each year. Thus, the court must decide for each case "whether this particular prisoner-plaintiff, among many deserving and not-so-deserving others, should be the beneficiary of the limited resources of lawyers willing and not-so-deserving others, should be the beneficiary of the limited resources of lawyers willing to respond to courts' requests." *McCaa v. Hamilton*, 893 F.3d 1027, 1036 (7th Cir. 2018) (Hamilton, J., concurring). In light of Williams's abilities and the relatively simple nature of his claim, I am not persuaded that this court should recruit a lawyer for Williams in this case. Accordingly, I am denying his motion.

ORDER

IT IS ORDERED that:

1. Defendant Jose Reyes's motion for summary judgment, Dkt. 40, is DENIED.

2. Plaintiff Jovan Williams's motion for assistance in recruiting counsel, Dkt. 52, is DENIED.

3. Plaintiff's motion for judgment in his favor, Dkt. 57, is DENIED.

Entered December 20, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge